UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NADIA ANTOINE,

                      Plaintiff,                   **MEMORANDUM AND ORDER**

      -against-                                     19-CV-1843 (RRM)

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,[1]

                      Defendant.
-----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

        In a stipulation dated April 16, 2020, the parties to this Social Security appeal agreed to reverse the Commissioner of Social Security's final decision denying plaintiff Nadia Antoine's claim for Social Security Disability Insurance ("SSDI") and to remand this matter for further administrative proceedings.  After obtaining a fully favorable decision from the Commissioner on remand and 17 days after plaintiff received a Notice of Award of past-due benefits, Christopher James Bowes – the attorney who successfully represented plaintiff before this Court pursuant to a contingency-fee arrangement – moved for an order awarding attorney's fees pursuant to 42 U.S.C. § 406(b).  For the reasons set forth below, the Court grants plaintiff's motion and awards Mr. Bowes $17,500.46 in attorney's fees.

## BACKGROUND

        In February 2012, plaintiff filed a claim for SSDI, alleging that she had been disabled since September 25, 2009.  After her claim was denied by a claims examiner, she requested a hearing before an Administrative Law Judge ("ALJ") and retained an attorney, Glenn S.

---

[1] The complaint in this action named Nancy A. Berryhill, who was then Acting Commissioner of Social Security, as defendant.  Federal Rule of Civil Procedure 25(d)(1) provides that "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending[, … the] officer's successor is automatically substituted as a party."  In December 2019, the Court, acting pursuant to this rule, substituted then-Commissioner Andrew S. Saul as defendant.  Since Kilolo Kijakazi is now Acting Commissioner, the Court has substituted her for Mr. Saul.

Wechsler, to represent her in all further proceedings before the Social Security Administration ("the SSA").

Despite Mr. Wechsler's efforts, plaintiff was not awarded any benefits in the ensuing administrative proceedings. In a decision dated August 28, 2013, ALJ Dina R. Loewy found that plaintiff was not disabled. Plaintiff then requested that the Appeals Council review the ALJ's decision, but that request was denied on December 21, 2014.

Plaintiff subsequently retained new counsel, Mr. Bowes, to represent her on appeal in federal courts and in any subsequent administrative proceedings. On May 14, 2015, plaintiff signed a "Retainer Agreement," a contingent-fee agreement in which she agreed to pay Mr. Bowes 25% of all past-due benefits recovered regardless of whether those benefits were awarded by a court or the SSA. (Retainer Agreement (Doc. No. 18 at 14).) Less than one month later, Mr. Bowes commenced an action in this Court, *Antoine v. Colvin*, 15-CV-3409 (LDH) (the "Prior Action"), appealing the denial of plaintiff's SSDI claim.

Plaintiff served a motion for judgment on the pleading on defendant on February 23, 2016, less than four months after defendant served plaintiff with a copy of the administrative record. On May 2, 2016, defendant served plaintiff with a cross-motion for judgment on the pleadings. In a Memorandum of Decision and Order dated March 31, 2017, Judge LaShann DeArcy Hall granted plaintiff's motion, denied defendant's cross-motion, and remanded the case to the Commissioner for further proceedings.

Thereafter, plaintiff moved for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). Rather than oppose the motion, the Commissioner signed a stipulation agreeing to award plaintiff $7,321.00 for attorney's fees and expenses and $400.00 in court costs. That stipulation, which was "so ordered" on September 7, 2017, provided that the Commissioner's

2

payment could be offset if plaintiff owed any debts subject to the Treasury Offset Program. Since plaintiff had a $3,460.06 tax debt that was subject to offset, Mr. Bowes received only $3,860.94 of the $7,321.00.

Following remand, plaintiff had two more hearings before ALJ Loewy. On November 30, 2018, the ALJ again ruled that plaintiff was not disabled. On March 24, 2019, in anticipation of appealing that decision to this Court, Mr. Bowes and plaintiff entered into a second contingent-fee agreement. The terms of that agreement (the "Second Retainer Agreement") were largely identical to those in the prior Retainer Agreement, except that it expressly provided that plaintiff's fee obligations would be offset by any EAJA fees Mr. Bowes received. (2d Retainer Agreement (Doc. No. 18 at 20)).

Mr. Bowes commenced this action about one week after the Second Retainer Agreement was signed. By order dated on April 24, 2019, the Court directed defendant to obtain and serve a copy of the administrative record with 90 days of the commencement of the action and directed plaintiff to serve her motion for judgment on the pleadings within 60 days of service of the administrative record. However, defendant did not serve the administrative record until October 11, 2019.

On January 16, 2020, after requesting two short extensions of the time to serve her motion, plaintiff served the motion for judgment on the pleadings on defendant. Defendant neither responded to that motion nor filed the cross-motion permitted by the Court's April 24, 2019, order. Rather, defendant stipulated to reversal of the Commissioner's final decision denying SSDI and to a second remand of this matter. Plaintiff did not seek EAJA fees in this action, though Mr. Bowes concedes that plaintiff could have been awarded as much as $3,817.50 in attorney's fees had he done so.

3

On remand, plaintiff's case was assigned to ALJ Hilton Miller. On October 28, 2020, ALJ Miller granted plaintiff's claim for SSDI, finding that she had been disabled since September 25, 2009. On November 15, 2020, the SSA mailed plaintiff a Notice of Award (the "NOA") explaining that she was owed past-due benefits for a period from February 2011 – one year prior to the date plaintiff filed her claim – until October 2020. The NOA did not precisely calculate the past-due benefits, but implied that 25% of this amount was $25,178.90.

The Instant Motion

On December 2, 2020, plaintiff moved for attorney's fees pursuant to 42 U.S.C. § 406(b). In the Memorandum of Law in Support of the Motion (the "Memo"), Mr. Bowes notes that plaintiff "agreed to pay an attorney fee of twenty-five percent of the past due benefits payable to her in exchange for legal services in federal court." (Memo (Doc. No. 19) at 1.) Although Mr. Bowes himself calculates that the past-due benefits totaled $106,441, he relies on that portion of the NOA that implied that 25% of the past-due amount was $25,178.90. (*Id.* at 2.) Accordingly, he requests an award of $25,178.90, less the $3,860.94 in EAJA fees he received in the Prior Action and the $3,871.50 he might have received in EAJA fees in this case – a total of $17,500.46. (*Id.* at 6.)

In support of the motion, Mr. Bowes executed a 12-page declaration (the "Bowes Declaration"), which attaches six exhibits. These exhibits include time records for the Prior Action and for this case. The former show that Mr. Bowes spent 38.8 hours on the Prior Action, including 23.3 hours drafting the motion for judgment on the pleadings and 5.2 hours drafting his reply to defendant's opposition to that motion. The time records for this case show that Mr. Bowes spent a total of 18.1 hours, 13.6 of which were spent drafting the second Rule 12(c) motion.

4

**STANDARD OF REVIEW**

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, the Act provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….

42 U.S.C. § 406(b)(1)(A).

"Section 406(b) does not prohibit contingent fee agreements." *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990). Indeed, the Supreme Court has noted that "the marketplace for Social Security representation operates largely on a contingency fee basis," *Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002), and that attorneys and clients "characteristically" enter into contingent-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803. However, while "§ 406(b) allows contingency agreements[, it] … 'gives no guidance as to how a court should treat them in determining a "reasonable fee."'" *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis." *Id.* at 849. Under these guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371. The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable. *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371). "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best

5

indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations." *Wells*, 907 F.2d at 371. But a court "ought not blindly approve every fee request made pursuant to a contingent agreement." *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of the contingent-fee agreement. The Second Circuit has "instructed courts to 'determine whether the contingency percentage is within the 25% cap' and then to consider 'whether there has been fraud or overreaching in making the agreement, and' … 'whether the requested amount is so large as to be a windfall to the attorney.'" *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372). In *Gisbrecht*, the Supreme Court provided examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the representation and the results the representative achieved, noting that courts may reduce the requested fees where the representation is substandard. Second, the Court indicated that a reduction is appropriate where the attorney is responsible for delay, lest the attorney profit from the accumulation of benefits during a delay that the attorney caused. And third, a reduction may be in order if the benefits are large in comparison to the amount of time counsel spent on the case—the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

## DISCUSSION

In this case, most of the factors do not require lengthy discussion. First, the contingent fee specified in both Retainer Agreements does not exceed 25% of the past-due benefits. Second, there is no evidence of fraud or overreaching in the making of either agreement. As the Supreme Court has noted, attorneys and clients "characteristically" enter into contingent-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the

6

claimant becomes entitled." *Gisbrecht*, 535 U.S. at 803. Although *Gisbrecht* was decided in 2002, there is nothing to suggest that this has changed over the past 20 years.

Third, Mr. Bowes' representation was not substandard and ultimately achieved the results plaintiff wanted. Plaintiff filed her application for SSDI in February 2012, alleging that she had been disabled since September 25, 2009. Although plaintiff was represented by another attorney at the agency level, she had no success prior to retaining Mr. Bowes in mid-May 2015. Mr. Bowes not only twice convinced this Court to remand this matter the Commissioner, but ultimately vindicated plaintiff's claims in administrative proceedings, where plaintiff was found to have been disabled as of September 25, 2009 – as she had claimed. As a result of Mr. Bowes' efforts, plaintiff was awarded over $100,000 in past-due benefits and is presumably still receiving SSDI benefits.

Fourth, there is no evidence of inordinate delay before this Court. Mr. Bowes commenced the Prior Action within a month of signing the Retainer Agreement and served the first motion for judgment on the pleadings less than four months after service of the administrative record. He commenced this action about one week after signing the Second Retainer Agreement and served the second Rule 12(c) motion a little more than three months after service of the administrative record. Although Mr. Bowes requested several short extensions of the briefing schedule in both cases, the solo practitioner provided good cause for the extensions, which made it clear that they were not merely efforts to delay the proceedings.

<u>The "Windfall" Factor</u>

The so-called "windfall factor" requires a lengthier discussion. "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854. The Second Circuit has

7

identified four "factors to be considered" in making this determination.  First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do."  *Id.*  Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level."  *Id.* at 855.  Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court.'"  *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant."  *Id.*  "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result."  *Id.* at 855.  Since contingent-fee arrangements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk."  *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court is satisfied that the $17,500 requested by Mr. Bowes would not constitute a windfall.  First, he was particularly efficient.  According to the time records, Mr. Bowes spent a total of only 23.3 hours reviewing the 636-page Administrative Transcript and drafting a 23-page motion for judgment on the pleadings in the Prior Action.  He spent only 5.2 hours drafting a seven-page reply to defendant's opposition to that motion.  In this case, he spent only 13.6 hours drafting the second Rule 12(c) motion.

Second, the Court notes that Mr. Bowes had a long and successful professional relationship with plaintiff. Mr. Bowes began representing plaintiff in mid-May 2015 in connection with plaintiff's appeal of ALJ Loewy's first unfavorable decision. After he succeed in having the ALJ's decision reversed, he represented plaintiff on remand. When ALJ Loewy again denied plaintiff's claim, Mr. Bowes commenced this action and succeeded in having this matter remanded for a second time. He again represented plaintiff on remand and on October 28, 2020, after almost five and one-half years of effort, persuaded ALJ Miller to grant plaintiff's claim for disability insurance benefits.

This lengthy history suggests that the case was indeed complex, requiring considerable effort and skill to obtain a fully favorable result. Accordingly, there was a substantial risk that the litigation might prove unsuccessful and that Mr. Bowes might receive no compensation at all for his work. It was not a case in which the lawyer engaged on a contingent-fee basis succeeds immediately and with minimal effort – the sort of case in which there was "very little risk of nonrecovery." *See Fields*, 24 F.4th at 856.

With respect to the third factor, neither the Bowes Declaration nor the Memo divulges whether plaintiff was satisfied with the law firm's efforts. However, the Court notes that Mr. Bowes ultimately managed to obtain all the relief plaintiff sought – a result that should satisfy most reasonable clients. Furthermore, the record contains no indication that plaintiff, who has a direct financial stake in the fee determination, objects to the fee award.

Finally, the Court notes that when plaintiff retained Mr. Bowes, success in this case was far from certain. By May 2015, plaintiff's prior counsel had already been litigating her disability claims for over three years at the agency level, without success. The proceedings before the agency and the Commissioner's decision were not clearly flawed, as evidenced by the fact that

defendant's counsel elected to file a cross-motion for judgment on the pleadings in the Prior Action rather than a stipulation of remand. As a result, it took considerable effort and skill to secure a favorable result.

Although the $25,178.90 fee sought by plaintiff amounts to $442.51 for each of the 56.9 hours Mr. Bowes expended on plaintiff's behalf, that fee is nonetheless reasonable in the context of this case. As noted above, there was a substantial risk that Mr. Bowes might be unsuccessful and receive no compensation for his efforts. The $442.51 hourly fee, which might be considered high if awarded in a non-contingency case, was reasonable compensation in light of that risk. *See Fields*, 24 F.4th at 854 ("even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case.")

The Court notes that "net attorney fee of $17,500.46" requested by Mr. Bowes is actually less than the full 25% of past-due benefits. It is well established that an attorney who receives fee awards under both the EAJA and § 406(b) for the same work must "refun[d] to the claimant the amount of the smaller fee." *Ward v. Kijakazi*, 20-CV-5412 (PGG)(JLC), 2023 WL 329210, at *2 (S.D.N.Y. Jan. 20, 2023) (quoting *Gisbrecht*, 535 U.S. at 796.) Therefore, the $25,178.90 Mr. Bowes is owed under the terms of the Retainer Agreements is offset by the $3,860.94 Mr. Bowes received in EAJA fees in the Prior Action.

In addition, Mr. Bowes concedes that plaintiff should not have to pay the $3,817.50 he might have received in EAJA fees in this case had he applied for them. The Government pays EAJA fees and, as noted above, the amount of § 406(b) fees paid out of the plaintiff's award is reduced by the amount of the EAJA fees. Thus, "filing for EAJA fees saves the plaintiff money. If the attorney could have received EAJA fees but failed to apply for them, it is unfair to make the plaintiff bear the burden of this error." *Iliceto v. Sec'y of Dep't of Health & Hum. Servs.*, No.

10

83-CV-2160, 1990 WL 186254, at *1 (E.D.N.Y. Nov. 14, 1990).  Accordingly, the $25,178.90 Mr. Bowes is owed under the terms of the Retainer Agreements is reduced both the $3,860.94 in EAJA fees he received in the Prior Action and the $3,817.50 he might have received in EAJA fees in this case.

## CONCLUSION

For the reasons set forth above, the Court grants plaintiff's motion for attorney's fees pursuant to 42 U.S.C. § 406(b) and awards Mr. Bowes $17,500.46.  The Commissioner is directed to pay that amount of the withheld past-due benefits to Mr. Bowes and to pay the remaining $7,732.44 of past-due benefits to plaintiff.

SO ORDERED.

Dated:  Brooklyn, New York
        March 30, 2023

/s/ *Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge